UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

LEE ANNA BECKNELL,        )
                          )
        Plaintiff,        )
                          )                Case No.
v.                        )            5:17-cv-490-JMH-MAS
                          )
UNIVERSITY OF KENTUCKY,   )          **MEMORANDUM OPINION**
                          )              **AND ORDER**
        Defendant.        )
                          )
                          )

\*\*\*

Plaintiff Lee Anna Becknell, a former employee of the University of Kentucky College of Dentistry, alleges that the University violated the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601-2654, when it engaged in certain actions and eventually terminated Becknell's employment after she was granted FMLA leave. Becknell alleges both FMLA interference and retaliation.

In response, the University argues that Becknell's claims are barred based on sovereign immunity and that, in any event, it is also entitled to summary judgment on the substantive claims as a matter of law.

The parties have filed cross motions for summary judgment. Having considered those motions, Becknell's motion for summary judgment [DE 33] is **GRANTED IN PART** and **DENIED IN PART**. Similarly,

the University's motion for summary judgment [DE 34] is **GRANTED IN PART** and **DENIED IN PART**.

First, Becknell's claims are not barred based on sovereign immunity because, in *Nev. Dep't of Human Resources v. Hibbs*, 538 U.S. 721 (2003), the United States Supreme Court held that Congress expressly abrogated sovereign immunity under the family-leave provision of the FMLA.

Second, Becknell is entitled to summary judgment on her claim for FMLA interference arising from the University's decision to discipline Becknell for failing to comply with the College od Dentistry's twenty-four-hour notice policy for temporary disability leave. Otherwise, the University is entitled to summary judgment pertaining to FMLA interference for refusal to allow Becknell to use paid leave and requests for Becknell's marriage license and training list.

Third, summary judgment for both parties is denied on the FMLA retaliation claim because genuine disputes of material fact exist pertaining to whether the University had a legitimate, non-discriminatory reason for terminating Becknell's employment.

Fourth, and finally, summary judgment on the issue of damages is premature at this point and is denied.

## I.  Procedural and Factual Background

Plaintiff Lee Anna Becknell was employed at the University of Kentucky College of Dentistry.  Most recently, Becknell served in

the position of Account Clerk 3. [DE 34-1 at 4-5, Pg ID 254-55].
In this role, Becknell was responsible for accounts receivable
reports ("ARRs") and explanations of benefits ("EOBs") for patient
accounts. [*Id.*].

In the evening on Wednesday, March 8, 2017, Becknell's husband
was hospitalized due to an apparent diabetic coma. [Id. at 7, Pg
ID 257; DE 33-1 at 5, Pg ID 122]. Becknell contacted her direct
supervisor, Adrian Thompson, that same night to notify him of her
husband's medical emergency. [DE 33-3 at 13, Pg ID 157]. Becknell
was absent from work on the subsequent Thursday and Friday
following her husband's hospitalization. [*Id.* at 14, Pg ID 158].

Then, Becknell submitted an initial request for FMLA leave on
Monday, March 13, 2017. [DE 34-19 at 1, DE 34-11 at 8, Pg ID 329].
Becknell requested FMLA leave from March 9, 2017, until April 3,
2017.[1] [DE 34-19 at 1-5, Pg ID 382-86].

On March 15, 2017, while Becknell's FMLA request was pending,
a representative from the University of Kentucky Medical Center
contacted Becknell to notify her that her husband would be released

---

[1] The FMLA leave request form contains two different start dates
for the requested FMLA leave. It is unclear if these are two
separate forms or the same forms with conflicting dates. The first
page, which was apparently completed by Becknell, requests FMLA
leave beginning on March 9, 2017. [*See* DE 34-11 at 8, Pg ID 329;
DE 34-19 at 1, Pg ID 382]. The second page, which was apparently
completed by a physician or physician's employee, requests FMLA
leave beginning on March 10, 2017. [See DE 34-11 at 8, Pg ID 329;
DE 34-19 at 2, Pg ID 383]. Still, it is undisputed that Becknell's
husband was hospitalized in the evening on March 8, 2017.

later that day and that she must be present to receive care instructions before he could be discharged. [DE 33-1 at 5-6, Pg ID 122-23]. Becknell submitted an absence request that morning so that she could be at the hospital when her husband was discharged. [DE 33-13 at 1, Pg ID 212].

Later, on March 22, 2017, Becknell's FMLA request was initially denied by the University of Kentucky because the University claimed their records did not show that Becknell was currently married. [DE 33-14 at 1, Pg ID 213]. Additionally, that same day, Thompson issued a corrective action memorandum due to Becknell's failure to provide twenty-four hours' advance notice when she left work early on March 15, 2017, the day of her husband's discharge from the hospital. [DE 33-17 at 1, Pg ID 218]. According to the memorandum, the College of Dentistry Attendance and Time Reporting Policy requires that scheduled temporary disability leave "be approved by the supervisor no later than 24 hours in advance." [*Id.* (emphasis omitted)].

Subsequently, on March 24, 2017, Becknell's FMLA leave was approved by the University, with a retroactive effective date for FMLA leave beginning on March 8, 2017, and extending until April 3, 2017.[2] [DE 33-19 at 1, Pg ID 221]. Still, retroactive

---

[2] Initially, Becknell's FMLA leave was approved beginning on March 13, 2017. [DE 33-16 at 1, Pg ID 217]. But the University amended the FMLA leave to begin on March 8, 2017. [DE 33-19 at 1, Pg ID 221].

application of Becknell's FMLA leave did not restore her pay for the afternoon of March 15, 2017, because Becknell "had violated the University's time and attendance policy." [DE 34-1 at 10, Pg ID 260; see also DE 34-8 at 4, Pg ID 315; DE 34-21 at 7, Pg ID 394].

On April 4, 2017, the day Becknell returned from her approved FMLA leave, the University provided a due process statement to Becknell. [DE 33-20 at 1-2, Pg ID 222-23]. The due process statement inquired about two work related items: (1) EOBs from December 2016 that the University claimed had not been completed, even though Becknell allegedly indicated that they had been completed; and (2) EOBs where the transaction note date and the date of entry into the University's axiUm database did not match. [*Id.*]. Becknell provided handwritten responses to each of the inquiries. [*Id.*].

Ultimately, the University of Kentucky terminated Becknell's employment on April 12, 2017. [DE 33-21 at 1, Pg ID 224]. The employee separation sheet explained that Becknell was "terminated due to falsification of other records." [*Id.*]. Of course, the parties dispute the actual reason that Becknell was terminated.

According to the University, Becknell was terminated because she changed the date field in the transaction notes in the axiUm database system, entering dates that did not represent the actual date that she entered the note into the patient's file. [*Id.; see*

*also* DE 34-1 at 10-13, Pg Id 260-63]. The University asserts that Adrian Thompson, Becknell's supervisor, discovered this practice when working on Becknell's accounts while she was on FMLA leave. [DE 34-1 at 10, Pg ID 260]. Additionally, the University states that an audit of Becknell's records, initiated after the University received her responses on the due process statement, found that several other accounts had been falsified. [*Id.* at 12, Pg ID 262]. The University argues that Becknell's practice of changing the transaction date constitutes falsification of University records in violation of University Policy # 12.0. [DE 33-21 at 2, Pg ID 225].

Alternatively, Becknell argues that she was terminated because she took FMLA leave. Becknell claims that there was no policy preventing her practice of changing the transaction dates and that her supervisors were aware of her method for inputting patient data. [DE 33-1 at 9, Pg ID 126]. Furthermore, Becknell argues that she was singled out while on FMLA leave because the College of Dentistry failed to investigate whether any other accounts receivable counselors had engaged in the same method of data entry. As such, Becknell asserts she was fired based on her decision to take FMLA leave.

As a result, Becknell initiated the present lawsuit in Fayette Circuit Court claiming FMLA retaliation, FMLA interference, and a claim for unpaid wages pursuant to K.R.S. § 337.010(1)(c). The

action was removed to this Court pursuant to 28 U.S.C. § 1331, arising under jurisdiction, on December 15, 2017. [DE 1]. After discovery, the parties filed cross motions for summary judgment. [DE 33; DE 34]. Those motions have been fully briefed and are ripe for review. [See DE 35; DE 37; DE 38; DE 41].

## II.  Standard of Review

Summary judgment is appropriate only when no genuine dispute exists as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A material fact is one "that might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party has the burden to show that "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Smith v. Perkins Bd. of Educ.*, 708 F.3d 821, 825 (6th Cir. 2013) (internal quotations omitted). The Court construes the facts in the light most favorable to the nonmoving party and draws all reasonable inferences in the non-moving party's favor. *See Anderson*, 477 U.S. at 248; *Hamilton Cty. Educ. Ass'n v. Hamilton Cty. Bd. of Educ.*, 822 F.3d 831, 835 (6th Cir. 2016).

### III.  Analysis

In the present motion for summary judgment, Becknell argues that she is entitled to summary judgment on her FMLA interference and retaliation claims.  Becknell also asserts that she is entitled to summary judgment on Defendant's mitigation of damages defense and that she is entitled to damages under the FMLA as a matter of law.

Alternatively, the University of Kentucky asserts that it is entitled to summary judgment based on all of Becknell's claims, based on sovereign immunity and because the University had a legitimate, non-discriminatory reason for terminating Becknell's employment.  These arguments are addressed in turn below.

### A.  Sovereign Immunity

Initially, the University claims that Becknell's claims for FMLA interference and FMLA retaliation are barred by sovereign immunity.  But the University's argument amounts largely to an invitation for this Court to disregard over fifteen-years of binding Supreme Court precedent.  In so doing, the University asks this Court to violate the maxim that there are old judges and bold judges, but there are no old, bold judges.

The Eleventh Amendment to the United States Constitution bars suits by private litigants in federal courts against states and state agencies, including agencies like the University of Kentucky.  U.S. Const. amend. XI; *Alabama v. Pugh*, 438 U.S. 781,

8

781-82 (1978); *Hutsell v. Sayre*, 5 F.3d 996, 999-1003 (6th Cir. 1993) (discussing sovereign immunity and finding that a suit against the University of Kentucky Board of Trustees and University employees in their official capacities was a suit against the state for Eleventh Amendment purposes).

Still, as the University concedes, sovereign immunity under the Eleventh Amendment is not absolute and is subject to certain limited exceptions. Relevant here, sovereign immunity may be abrogated by Congress with respect to rights protected by the Fourteenth Amendment. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984) (citing *Fitzpatrick v. Bitker,* 427 U.S. 445 (1976)). Still, the United States Supreme Court has "required an unequivocal expression of congressional intent to 'overturn the constitutionally guaranteed immunity of the several States.'" *Id.* (quoting *Quern v. Jordan*, 440 U.S. 332, 342 (1979) (holding that 42 U.S.C. § 1983 does not override States' Eleventh Amendment immunity)).

In *Nev. Dep't of Human Res. v. Hibbs*, the United States Supreme Court held that Congress clearly explicated an intent to abrogate the sovereign immunity of states for the purposes of the family-care portion of the FMLA and that, in doing so, Congress acted within its authority under the enforcement section of the Fourteenth Amendment. 538 U.S. 721, 726-40 (2003). This abrogation of sovereign immunity by Congress for the family-leave

provision of the FMLA has been recognized by the Sixth Circuit and other courts. *See, e.g.*, *Diaz v. Michigan Dep't of Corr.*, 703 F.3d 956, 960-61 (6th Cir. 2013); *Touvell v. Ohio Dep't of Mental Retardation & Developmental Disabilities*, 422 F.3d 392, 394, 397-98 (6th Cir. 2005) (discussing Hibbs and stating that the Supreme Court held "that the 'family-care' provision of the Act, § 2612(A)(1)(C), which entitles employees to take leave to care for seriously ill family members, abrogated state immunity."); *Algie v. Northern Ky. Univ.*, No. 08-cv-109-DLB-JGW, 2013 WL 624396, at *5 (E.D. Ky. Feb. 20, 2013).

Here, it is undisputed that Becknell requested FMLA leave under the family-care provision of 29 U.S.C. § 2612(a)(1)(C). Even so, notwithstanding the status of *Hibbs* as binding precedent, the University claims it is entitled to sovereign immunity in two ways.

First, the University invites this Court to adopt the holding of the three dissenting justices in *Hibbs*. *See Hibbs*, 538 U.S. at 744-59 (Kennedy, J., joined by Scalia & Thomas, JJ., dissenting). Moreover, the University also points to concurrences in *Coleman v. Ct. of App. of Md.* to support its contention that *Hibbs* was incorrectly decided. *See* 566 U.S. 30, 44-45 (2012) (Scalia, J., & Thomas, J., concurring).

But, in our common-law legal tradition, courts decide the applicable law by interpreting statutes and applying precedent based on the principle of *stare decisis*. "*Stare decisis* 'promotes

the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process.'" *Pearson v. Callahan*, 555 U.S. 223, 233 (2009) (quoting *Payne v. Tennessee*, 501 U.S. 808, 827 (1991)). Thus, while "*[s]tare decisis* is not an inexorable command," courts must "approach the reconsideration of [their] decisions . . . with the utmost caution." *State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997) (internal quotation marks omitted).

In its motion for summary judgment, the University's argument largely amounts to regurgitation of dissents and concurrences from previous cases. [*See* DE 34-1 at 17-19, Pg ID 267-69]. Additionally, and more importantly, the University has failed to develop a compelling argument the would justify considering departure from the holding in *Hibbs*. For instance, the University has not argued that abandoning the precedent from Hibbs "would not upset expectations." *See Pearson*, 555 U.S. at 233. To the contrary, holding that *Hibbs* was incorrectly decided would uproot nearly fifteen years of precedent, constituting a major shift in the applicable law. Furthermore, the Supreme Court "has expressed its reluctance to overrule decisions involving statutory interpretation." *Khan*, 522 U.S. at 20 (citing *Ill. Brick Co. v. Illinois*, 431 U.S. 720, 736 (1977)). In *Hibbs*, the holding rests on the Supreme Court's interpretation of the FMLA statute and the

11

power of Congress to abrogate the sovereign immunity of the states. Finally, the University has not argued that experience has pointed to precedential shortcomings of the *Hibbs* decision. As a result, the University has not provided a sufficiently compelling justification for this Court to consider departing from the precedent in *Hibbs*.

As a result, absent an extremely compelling justification to consider departing from *Hibbs*, which is lacking here, this Court is bound by the holding of the United States Supreme Court and refuses to consider the propriety of the holding in *Hibbs*. If the University genuinely believes that there is a compelling reason to depart from the rule of law announced in *Hibbs*, that argument must be raised before the Supreme Court.

Second, the University argues that it is entitled to sovereign immunity on Becknell's FMLA retaliation claim because the University argues that *Hibbs* is limited to FMLA interference claims under 29 U.S.C. § 2612(a)(1). But neither the statutory language in § 2612(a)(1) nor the holding in *Hibbs* is as limited as the University asserts.

The relevant statutory provision of the FMLA states,

[A]n eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period for one or more of the following:

. . .

> (C) In order to care for the spouse, or a son,
> daughter, or parent, of the employee, if such spouse,
> son, daughter, or parent has a serious health condition.

29 U.S.C. § 2612(a)(1)(c). Nothing in the plain language of this statutory provision pertaining to family-care distinguishes between FMLA interference and retaliation.

Additionally, the Supreme Court's holding in *Hibbs* is not limited to situations involving FMLA interference. The holding of the Supreme Court in *Hibbs* is "that employees of the State of Nevada may recover money damages in the event of the State's failure to comply with the family-care provision of the Act." Hibbs, 538 U.S. at 725. The Court did not limit its holding to interference with the family-care provision of the FMLA as opposed to retaliation or discrimination under the FMLA. Instead, the Supreme Court held that Congress abrogated sovereign immunity in the event of a state's *failure to comply* with the family-care provision of the FMLA.

The Sixth Circuit has acknowledged a similar understanding of the holding in Hibbs. In Diaz, the court explained that "[i]n *Nevada Department of Human Resources v. Hibbs*, the Supreme Court held that a state employee may recover money damages in federal court *for a state's failure to comply* with the family-care provision of the Family Medical Leave Act." 703 F.3d at 958 (emphasis added).

Finally, the University has not cited any authority, nor is this Court aware of any binding authority, that interprets *Hibbs* to be limited to the FMLA interference context. As a result, the University's argument for sovereign immunity on Becknell's FMLA retaliation claim is unavailing.

In sum, *Hibbs* constitutes binding precedent that stands for the proposition that Congress expressly abrogated the sovereign immunity of the states for failure to comply with the FMLA family-care provision. As such, the University's claim for summary judgment based on sovereign immunity under the Eleventh Amendment must be denied.

## B. FMLA Interference

Both parties argue that they are entitled to summary judgment on the FMLA interference claim in various ways. The main point of contention between the parties, however, is whether the University's decision to discipline Becknell and refusal to pay Becknell for violation of the College of Dentistry's Attendance and Time Reporting Policy constitutes FMLA interference.

The FMLA creates substantive rights. As such, "[i]f an employer interferes with the FMLA-created right to medical leave or to reinstatement following the leave, a violation has occurred." *Robinson v. T-Mobile*, 663 F. Supp. 2d 604, 612 (E.D. Tenn. 2009); *see also* 29 U.S.C. § 2615(a)(1) (requiring that an employer not "interfere with, restrain, or deny the exercise of" FMLA rights).

In the FMLA interference context, the intent of the employer is not relevant.

In the Sixth Circuit, the *McDonnell-Douglas* burden-shifting framework is applied in the FMLA interference context. *Donald v. Sabra, Inc.*, 667 F.3d 757, 762-63 (6th Cir. 2012).

In order to establish a prima facie case of FMLA interference, Becknell must prove five elements:

> (1) she was an eligible employee, (2) the defendant was an employer as defined under the FMLA, (3) she was entitled to leave under the FMLA, (4) she gave the employer notice of her intention to take leave, and (5) the employer denied the employee FMLA benefits to which she was entitled.

*Donald*, 667 F.3d at 761 (quoting *Killian v. Yorozu Auto. Tenn., Inc.*, 454 F.3d 549, 556 (6th Cir. 2006)). Here, only the last two elements are in dispute.

If Becknell meets her prima facie burden, the University "may prove it had a legitimate reason unrelated to the exercise of FMLA rights for terminating [Becknell]." *Donald*, 667 F.3d at 762 (citing *Grace v. USCAR*, 521 F.3d 655, 670 (6th Cir. 2008)). But Becknell may "rebut the [University's] reason by showing that the proffered reason had no basis in fact, did not motivate the termination, or was insufficient to warrant the termination." *Id.*

**(1)  FMLA Leave on March 15, 2017**

Here, the University argues that Becknell failed to comply with University policy when she requested leave on March 15, 2017,

without providing twenty-four hours' notice.[3]  As such, the University claims that it is entitled to discipline and deny Becknell pay based on her failure to provide notice, even though she was granted FMLA pay for a time period that included March 15, 2017.

On this issue, the material facts are not in dispute. Becknell's husband was in the hospital.  On the morning of March 15, 2017, Becknell reported to work.  A representative from the University of Kentucky Medical Center called Becknell to notify her that her husband would be released at approximately 12:30 p.m. that day and that Becknell's presence was required before her husband could be discharged.  It is undisputed that Becknell was unaware that her husband was being discharged before this call.

Then, at around 9:16 a.m. that same day, Becknell submitted a leave request explaining that her husband was being released from the hospital and that she needed to be present before his

---

[3] A reading of the plain text of the College of Dentistry's Attendance and Time Reporting Policy, as outlined in the corrective action memorandum, suggests that Becknell did not actually violate the policy.  The policy states, "*[s]cheduled temporary disability leave shall be approved by the supervisor no less than 24 hours in advance*."  [DE 33-17 ay 1, Pg ID 218 (emphasis in original)].  But here, it does not appear that Becknell's request for disability leave was "scheduled" because she was unaware of her need for leave until a few hours before her husband's discharge from the hospital. As a result, the University's disciplinary action appears to disregard the word "scheduled" in the policy.  Regardless, Becknell has not argued that she did not actually violate the College of Dentistry's leave policy, but instead only argues that the policy's notice requirement is inconsistent with the FMLA.

discharge to receive care instructions. Becknell left work and did not work in the afternoon on March 15th. In response, the University issued Becknell a written disciplinary warning in a corrective action memorandum for her failure to comply with the College of Dentistry's twenty-four hour leave policy.

Then, on March 24, 2017, the University approved Becknell's FMLA leave request, with a retroactive effective date for FMLA leave beginning on March 8, 2017. But the University did not rescind the written warning for Becknell's violation of the College of Dentistry Attendance and Time Reporting Policy not was Becknell's pay restored for the afternoon of March 15th.

### i. Proper Notice Under the FMLA

Where the need for FMLA leave is foreseeable, "[a]n employer may require an employee to comply with the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances." 29 C.F.R. § 825.302(d). In these situations, an employer may require employees to provide written notice with reasons for the requested leave or contact a specific individual to notify them of the need for FMLA leave. *Id.*

But the rub is that FMLA regulations do not require notice where an employee's need to take FMLA leave is *unforeseeable*. Federal regulations explain that "[w]hen the approximate timing of the need for leave is not foreseeable, an employee should give notice to the employer of the need for FMLA leave *as soon as*

*practicable* under the facts and circumstances of the particular case." 29 C.F.R. § 825.303(a) (emphasis added). Additionally, "in the case of an emergency requiring leave because of a FMLA-qualifying reason, written advance notice pursuant to an employer's internal rules and procedures may not be required when FMLA leave is involved." 29 C.F.R. § 825.303(c).

As such, Becknell provided the University with proper notice of her need to take *unforeseen* FMLA leave on March 15, 2017, as soon as she became aware of that she needed to take FMLA leave. Becknell was unaware of that her husband was being discharged from the hospital on March 15th and notified her employer promptly when she discovered she required leave that afternoon. Becknell's notice comports with federal FMLA regulations for unforeseen leave and satisfies the fourth element of an FMLA interference claim, which requires that an employee demonstrate that she gave her employer notice of her intention to take leave.

## ii. Denial of FMLA Benefits and Burden Shifting

Thus, the only remaining question is whether the University's corrective action memorandum and refusal to allow Becknell to use accrued sick leave for her absence on March 15th denied Becknell FMLA benefits to which she was entitled and whether the University had a legitimate reason for disciplining Becknell that was unrelated to the FMLA. Of course, Becknell was retroactively granted FMLA leave on March 15th. Still, she was also issued a

corrective action warning and was not allowed to use accrued sick
leave based on her failure to provide notice pursuant to the
University's leave policy.

## a. Corrective Action Memorandum

First, Becknell argues that she was disciplined for failure
to give notice before taking FMLA leave on March 15, 2017, even
though no notice was required under FMLA regulations. An employee
has a right to invoke substantive rights provided by the FMLA
without being punished for invoking FMLA protections. In fact,
employers may not consider "FMLA leave as a negative factor in
employment actions, such as hiring, promotions or *disciplinary
actions*." 29 C.F.R. § 825.220(c) (emphasis added).

Here, the University's FMLA procedure policy incorporated the
College of Dentistry Attendance and Time Reporting policy by
reference. The University FMLA policy explains that "[a]n employee
shall follow standard departmental policies or practices for
notification of absence(s)." [DE 34-21 at 7, Pg ID 394]. As a
result, the College of Dentistry's Attendance and Time Reporting
Policy required employees to provide twenty-four hours' notice
before taking any leave, *including unforeseen FMLA leave*.

Still, Kathleen Hertz, Manager of Billing and
Collections/Financial Analyst Coordinator at the University of
Kentucky, was asked the following question at her deposition,
"Would you agree with me that when Lee Anna [Becknell] got the

call from the hospital on March 15th, that she had to be there for the discharge of her husband, that it was impossible under those circumstances for her to give 24-hours advance notice?" [DE 33-4 at 7-8, Pg ID 167-68]. Hertz replied, "That would be impossible, but it's still a corrective action." [*Id.* at 8, Pg ID 168].

Ultimately, the University of Kentucky's FMLA process, which incorporates the College of Dentistry's notice requirement, violates the FMLA in situations where unusual circumstances require employees to take unforeseen FMLA leave. There is no apparent exclusion in the University's FMLA policy for unforeseen situations or emergency FMLA leave. This notice requirement, without some allowance for unusual or unforeseen circumstances, conflicts with FMLA regulations that only require an employee to provide notice to take unforeseen FMLA leave as soon as practicable in emergency or unforeseen situations.

Thus, Becknell was disciplined for her failure to comply with the College of Dentistry's notice policy, even though her request for FMLA benefits was retroactively approved and a University representative admitted that it was impossible for Becknell to comply with the policy under the factual circumstances of this case. As a result, the University's corrective action memorandum, which faulted Becknell for failure to provide twenty-four hours' notice before taking unforeseen leave, effectively disciplined Becknell for taking FMLA leave to which she was entitled. This

discipline, which is related to Becknell's use of FMLA leave and the University's FMLA leave policy, constitutes FMLA interference.

Of course, "an employer may enforce its usual and customary notice and procedural requirements against an employee claiming FMLA-protected leave, unless unusual circumstances justify the employee's failure to comply with the employer's requirements." *Srouder v. Dana Light Axle Mfg., LLC*, 725 F.3d 608, 615 (6th Cir. 2013). Here, the University claims that they disciplined Becknell due to her violation of University leave policy and not based on her decision to take FMLA leave. Still, in this instance, the College of Dentistry leave policy and University's internal FMLA policy are inextricably intertwined such that disciplining an employee for failing to comply with the leave policy also constitutes disciplining an employee for taking unforeseen FMLA leave. As a result, the University's stated reason for disciplining Becknell is not legitimate because it is not unrelated to her FMLA leave.

Additionally, the disciplinary action in this case may be distinguished from other cases that have upheld disciplining or terminating an employee for failure to comply with an employer's internal policies. For instance, in *Srouder*, the Sixth Circuit held that an employer did not interfere with an employee's FMLA rights when the employee failed to comply with the employer's call in policy when he missed work due to medical complications from a

hernia. *See id.* at 611-12, 615. In so holding, the Court stated that the employee had "produced no evidence demonstrating the type of 'unusual circumstances' that would have justified his failure to follow the call-in requirements of Dana's attendance policy" because the employee's condition was unclear on the dates that he missed work and failed to call in. *Id.* at 615, 615 n.7.

By contrast, the present case involves a situation where unusual circumstances prevented Becknell from complying with the University's internal policy. It is undisputed that Becknell requested FMLA leave based on an unforeseen situation and that, as a result, she could not have complied with the University's policy.

In sum, the corrective action memorandum constituted disciplinary action based on Becknell taking FMLA leave without providing the University twenty-four hours' notice, which is not required by the FMLA in unusual or emergency circumstances. To hold otherwise would allow employers like the University of Kentucky to implement leave and attendance policies that indirectly discourage employees from using FMLA leave in unforeseen circumstances, contravening the substantive protections in the Act. At bottom, there is no genuine dispute of material fact pertaining to whether the University's disciplinary action constituted FMLA interference. The University's failure to rescind the written policy violation warning in the corrective action memorandum, after Becknell was granted FMLA leave,

constituted FMLA interference and entitles Becknell to summary judgment on this issue.

**b.    Refusal of Accrued Paid Leave**

Second, Becknell asserts that the University's refusal to allow her to use paid leave for her absence on March 15, 2017, effectively docked her pay and constitutes FMLA interference.

There is no entitlement to paid leave under the FMLA. Instead, the FMLA "provides for unpaid leave for up to twelve weeks in a twelve[-]month period for employees" to care for a family member with a serious health condition. *Allen v. Butler Cty. Comm'rs*, 331 F. App'x 389, 392 (6th Cir. 2009); *see also* 29 U.S.C. § 2612(c)(1)(C).

Still, FMLA regulations allow employers to run paid leave programs concurrent with unpaid FMLA leave. Relevant regulations provide that,

> *Generally, FMLA leave is unpaid leave.* However, under the circumstances described in this section, FMLA permits an eligible employee to choose to substitute accrued paid leave for FMLA leave. If an employee does not choose to substitute accrued paid leave, the employer may require the employee to substitute accrued paid leave for unpaid FMLA leave. The term substitute means that the paid leave provided by the employer, and accrued pursuant to established policies of the employer, will run concurrently with the unpaid FMLA leave. Accordingly, the employee receives pay pursuant to the employer's applicable paid leave policy during the period of otherwise unpaid FMLA leave. *An employee's ability to substitute accrued paid leave is determined by the terms and conditions of the employer's normal leave policy.* When an employee chooses, or an employer requires, substitution of accrued paid leave, the

23

employer must inform the employee that the employee must satisfy any procedural requirements of the paid leave policy only in connection with the receipt of such payment. See § 825.300(c). If an employee does not comply with the additional requirements in an employer's paid leave policy, the employee is not entitled to substitute accrued paid leave, but the employee remains entitled to take unpaid FMLA leave. Employers may not discriminate against employees on FMLA leave in the administration of their paid leave policies.

29 C.F.R. § 825.207(a) (emphasis added).

In the present case, the University of Kentucky chose to require its employees to substitute paid leave for FMLA leave. The University's internal FMLA policy provides that "[a] staff employee's leave accruals shall be used concurrently with FMLA." [DE 34-21 at 6, Pg ID 393]. The policy also states that "[a]ccrued balances of TDL and vacation leave, as applicable, shall be used prior to the employee being placed on FMLA without pay." [*Id.*].

Here, Becknell argues that the University FMLA policy required her to use accrued paid leave concurrently with FMLA leave and that the University's decision not to allow her to use her accrued paid leave constitutes FMLA interference. Specifically, Becknell argues that "[t]he Defendant interfered with Ms. Becknell's FMLA rights when it denied Ms. Becknell her paid time off that she otherwise would have received, but for her failure to comply with the Defendant's invalid internal FMLA notice requirement." [DE 35 at 15, Pg ID 430].

But here, the University's refusal to allow Becknell to use accrued paid leave while on FMLA leave did not deny Becknell *FMLA benefits* to which she was entitled. The FMLA does not provide employees any right to use paid leave while on FMLA leave. As a result, Becknell cannot satisfy the fifth element of the FMLA interference analysis because the University because the University did not deny her a benefit to which she was entitled under the FMLA when it refused to allow her to use accrued paid leave.

Of course, that is not to say that the University's decision on paid leave did not violate the University's own internal leave policy or that the University's policies are not inconsistent. Still, assuming, for the sake of argument, that the University's decision was a violation of internal University policy, that does not mean that the University interfered with Becknell's *FMLA rights*.

Ultimately, while the University may not discipline Becknell for her failure to give twenty-four hours' notice before taking FMLA leave, the University may base an employee's ability to substitute paid leave time on the employer's own leave policy. *See* 29 C.F.R. § 825.207(a); *see also Allen*, 331 F. App'x at 393-97. Here, the University refused to allow Becknell to use accrued paid leave for failure to comply with its internal leave policy. This decision does not constitute FMLA interference because, even

if there is a right to paid leave under internal University policies, there is no right to paid leave under the FMLA. As such, the University is entitled to summary judgment on this issue of FMLA interference as a result of the refusal to allow Becknell paid leave because the University's action did not deny Becknell a benefit to which she was entitled under the FMLA.

**(2)    Request for Becknell's Marriage License and Becknell's Training List**

In her initial complaint, Becknell appears to argue that the University interfered with her use of FMLA benefits in two additional ways. [DE 1-1 at 8-9, Pg ID 12-13]. First, Becknell contends that the University required her to produce a marriage license before granting her FMLA leave request. Second, Becknell asserts that a University staff member contacted her while she was on FMLA leave to request a training list. The University argues that they are entitled to summary judgment on the interference claims arising from these incidents. [DE 34-1 at 25-26, Pg ID 275-76].

Initially, it is worth noting that Becknell did not meaningfully respond in opposition to the University's arguments for summary judgment based on the requests for Becknell's marriage license and training list. [See DE 35 at 12-15, Pg ID 427-30]. Furthermore, Becknell has not moved for summary judgment on her FMLA interference claim based on these incidents. [DE 33-1 at 12-

15, Pg ID 129-32]. Becknell's motion for summary judgment and response in opposition to the University's motion for summary judgment exclusively discuss and address the disciplinary action and refusal to grant paid leave arising from the March 15, 2017, absence.

Becknell's failure to respond to the University's arguments for summary judgment indicates that these facts are undisputed and that any arguments to the contrary have been waived. The Court's scheduling order provides that "[f]ailure to make a response in compliance with sections (c) and (d) above, within the time periods provided by the Local Rules for motion practice, shall indicate that the asserted facts are not disputed for the purposes of summary judgment." [DE 11 at 6, Pg ID 62]. Additionally, the Sixth Circuit has explained that failure to oppose a motion shall constitute grounds for the Court to conclude that any arguments in opposition to said motion are waived. *See Humphrey v. United States Attorney Gen. Office*, 279 F. App'x 328, 331 (6th Cir. 2008). Finally, "issues referred to in a perfunctory manner without developed argumentation are deemed waived." *Id.* As such, Becknell appears to have waived any arguments in opposition to the University's motion for summary judgment on interference arising from the requests for the marriage license and the training list.

Still, consideration of the merits of the University's arguments demonstrates that they are entitled to summary judgment

on these issues. Becknell was not denied any FMLA benefits as a result of these actions.

First, "[f]or purposes of confirmation of family relationship, the employer may require the employee giving notice of the need for leave to provide reasonable documentation or statement of family relationship. This documentation may take the form of a simple statement from the employee, or a child's birth certificate, a court document, etc." 29 C.F.R. § 825.122(k). Thus, pursuant to federal regulations, the University has a legitimate right to require documentation, including a marriage license, to confirm the family relationship between Becknell and her husband. Additionally, Becknell was granted all the FMLA leave she was requested, so there are no facts to indicate that the request of her marriage license denied Becknell an FMLA benefit to which she was entitled and the University is entitled to summary judgment on interference related to the request for Becknell's marriage license.

Second, the contact between Becknell and Thompson pertaining to her training list appears to have been limited in time and there is no proof that this contact interfered with Becknell's FMLA leave. On March 15, 2017, while Becknell's was working and her FMLA request was pending, Thompson emailed Becknell to discuss Becknell's training needs and follow-up on a previous conversation about training. [DE 34-23 1-4, Pg IF 399-402]. Still, even while

on FMLA leave, it appears that Becknell chose to work intermittently.

Subsequently, on March 20, 2017, Thompson sent Becknell a short email that said, "I know you have been dealing with your family, but are you working on your Training list[?]" [DE 34-24 at 1-2, Pg ID 403-04]. Becknell responded, stating that she had not worked on the training list but indicating that she was working on other matters on March 20, 2017.[4] [Id. at 1, Pg ID 403]. There is no evidence that the University contacted Becknell on while she was on FMLA leave other than this one short email on March 20, 2017. That email, standing alone, cannot be said to have interfered with Becknell's FMLA leave. Thompson's email was short, did not indicate that it required an urgent response, and was apparently sent on a day that Becknell was working, even though she was on FMLA leave. As such, the University is entitled to summary judgment on alleged FMLA interference arising from the email request for Becknell's training list.

To summarize, the University interfered with Becknell's FMLA rights when it disciplined her for failure to comply with the College of Dentistry's twenty-four-hour notice policy, even though

---

[4] It is unclear based on the email correspondence between Thompson and Becknell whether Becknell was working from home or at the office on March 20, 2017. Regardless, Becknell's email response indicated that she had "been working on e mails and answering phone calls" on March 20th. [DE 34-24 at 1, Pg ID 403].

Becknell was retroactively granted FMLA leave during this time period.  Still, the University is entitled to summary judgment on Becknell's allegations of interference arising from the refusal to allow Becknell to use accrued paid leave, the request for Becknell's marriage license, and the request for Becknell's training list because these incidents did not result in a denial of FMLA benefits to which Becknell was entitled.

## C.  FMLA Retaliation

Federal regulations prevent an employer "from discriminating or retaliating against an employee or prospective employee for having exercised or attempted to exercise FMLA rights."  29 C.F.R. §825.220(c).  "The central issue raised by the retaliation theory . . . is 'whether the employer took the adverse action because of a prohibited reason or for a legitimate nondiscriminatory reason.'"  *Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 282 (6th Cir. 2012) (quoting *Edgar*, 443 F.3d at 508).  In the retaliation context, "[t]he employer's motive is relevant because retaliation claims impose liability on employers that act against employees specifically because those employees invoked their FMLA rights."  *Id.* (internal citations and quotations omitted).

An aggrieved employee may prove FMLA retaliation with direct or circumstantial or inferential evidence of FMLA retaliation. *Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 348 (6th Cir. 1997).  A

plaintiff need only prove retaliation based on either direct or circumstantial evidence, not both. *Id.* at 348-49.

**(1) Direct Evidence of FMLA Retaliation**

Direct evidence is evidence that "does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group." *DiCarlo v. Potter*, 358 F.3d 408, 415 (6th Cir. 2004), *overruled on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009); *see also Griffith v. City of Des Moines*, 387 F.3d 733, 736 (8th Cir. 2004) ("[D]irect evidence is evidence showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action." (internal citations and quotations omitted))). Direct evidence of discrimination "must establish not only that the plaintiff's employer was predisposed to discriminate on the basis of [FMLA leave], but also that the employer acted on that predisposition." *Id.*

If believed, direct evidence of discrimination "requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Demyanovich v. Cadon Plating & Coatings, LLC*, 747 F.3d 419, 432 (6th Cir. 2014).

Becknell claims that the sworn deposition testimony of her direct supervisor, Adrian Thompson, constitutes direct evidence of FMLA retaliation. At the deposition, Thompson was asked about a letter that he prepared and sent to the University's Human Resources Department to oppose Becknell's unemployment claim. The following colloquy occurred during the deposition,

> Counsel for Plaintiff: So Exhibit 2,[5] are you listing all the reasons you believe supports her termination in Exhibit 2?
>
> Thompson: Yes.
>
> Counsel for Plaintiff: Including her taking Family Medical Leave on March 15th, correct?
>
> Thompson: Yes, uh-huh (AFFIRMATIVE).
>
> Counsel for Plaintiff: That's a yes?
>
> Thompson: Yes, uh-huh. (AFFIRMATIVE).

[DE 33-10 at 9-10, Pg ID 195-96].

Later in the deposition, counsel asked Thompson whether Becknell's failure to work while on FMLA leave was a contributing factor in the University's decision to terminate Becknell's employment. The following conversation occurred,

> Counsel for Plaintiff: The Exhibit 2 that we were looking at, one of the entries you had in here is March 20th of '17, email Lee or training list. Do you mean to say, emailed Lee for training list?
>
> Thompson: Yes.

---

[5] Exhibit 2 refers to the letter that Thompson prepared for the University's Human Resources Department after Becknell applied for unemployment benefits. [DE 33-22 at 1, Pg ID 226].

. . .

Counsel for Plaintiff: She was on FMLA leave at the time?

. . .

Thompson: Yes, I believe she was on FMLA leave time.

Counsel for Plaintiff: But her failure to do that work while on FMLA leave, in your mind, was one of the reasons supporting termination, correct?

Thompson: It was one, yes, uh-huh (AFFIRMATIVE).

[DE 34-7 at 5, Pg ID 311].

On re-cross examination, counsel for the University attempted to clarify, asking Thompson,

Counsel for Defense: Mr. Roark was just asking you questions, and maybe I didn't hear the question correctly, so correct me if I'm mischaracterizing it, he asked you if one of the reasons Ms. Becknell was terminated was because of FMLA leave. Was that one of the reasons why Ms. Becknell was terminated was because she took FMLA leave?

Thompson: No.

[*Id.*].

In Thompson's letter, which was discussed during the deposition, Thompson states that Becknell was terminated because she falsified University of Kentucky documents. [DE 33-22 at 1, Pg ID 226]. Additionally, Thompson provided a timeline of events regarding Becknell, including, "Emailed Lee [for] Training List," and "Corrective Action-Violation of College of Dentistry Attendance and Time Reporting Policy For No Pay Status." [*Id.*].

Based on the foregoing evidence, Becknell has submitted enough proof to allow a reasonable fact finder to conclude that the termination of Becknell's employment was motivated, at least in part, by Becknell's use of FMLA leave. During his deposition, Thompson initially stated unequivocally that Becknell's decision to take FMLA leave on March 15, 2017, was a factor in the decision to terminate her employment. Moreover, Thompson also admitted that Becknell's refusal to work while on FMLA leave was a factor in her termination. These two admissions constitute direct evidence of FMLA retaliation.

The University argues that Becknell may not rely on the deposition testimony of Thompson to demonstrate direct evidence of FMLA retaliation because Thompson was not the ultimate decisionmaker pertaining to Becknell's termination. In support of its argument, the University cites this Court's previous decision in *Land v. S. States Coop., Inc.*, where the Court explained that "actions by nondecisionmakers cannot alone prove pretext. Neither can decisionmakers' statements or actions outside of the decisionmaking process." No. 15-cv-83-JMH, 2016 WL 4726541, at *9 (E.D. Ky. Sept. 9, 2016), aff'd, 740 F. App'x 845 (6th Cir. 2018). But the University's reliance on *Land* at this stage in the litigation is misplaced. The *Land* opinion stands for the proposition that the actions or statements of nondecisionmakers, standing alone, may not prove pretext. But pretext is only

considered when the employer articulates a legitimate, non-discriminatory reason for the adverse employment action and the burden shifts back to the employee to demonstrate that the proffered reason was pretext.

Additionally, the present case is factually distinguishable from *Land*. In *Land*, the plaintiff had a subjective belief that his supervisors disapproved of his use of leave because the plaintiff told his supervisors about his knee, hip, and lower-back pain. But the Court explained in *Land* that the plaintiff's direct supervisors were not involved in the termination decision. *Land*, 2016 WL 4726541, at *9.

By contrast, Thompson may not have been the only or final person who decided to terminate Becknell's employment, but Thompson was very clearly involved in the decision to terminate Becknell's employment. First, Thompson discovered Becknell's alleged falsification of records, which resulted in an audit of Becknell's record entries. Furthermore, Thompson wrote the March 22, 2017, corrective action memorandum pertaining to Becknell's failure to comply with the College of Dentistry's twenty-four-hour notice policy. Similarly, Thompson signed the University of Kentucky Employee Separation sheet. Finally, this is not a case where Becknell had a subjective belief, based on the conduct of her supervisor, that Becknell's use of FMLA leave was a factor in the adverse employment decision. Instead, in this case, Thompson

unequivocally admitted that Becknell's use of FMLA leave played a role in the decision to terminate her.  These facts indicate that Thompson was directly involved in the employee disciplinary process and would have knowledge about the reasons for terminating Becknell's employment, even if he was not the final decisionmaker.

Additionally, the Sixth Circuit has held that deposition testimony from a direct supervisor may constitute direct evidence of FMLA retaliation.  In *Hunter v. Valley View Local Sch.*, the plaintiff's direct supervisor testified in a deposition that the plaintiff was placed on involuntary leave based on plaintiff's medical restrictions and permanent absenteeism, including plaintiff's use of FMLA leave.  579 F.3d 688, 692 (6th Cir. 2009).  In *Hunter*, the Sixth Circuit found that the deposition testimony of plaintiff's direct supervisor provided direct support for plaintiff's FMLA retaliation claim.  *Id.*

Ultimately, Thompson testified that Becknell's decision to use FMLA leave on March 15, 2017, and her refusal to work while on FMLA leave were contributing factors in the University's decision to terminate Becknell's employment.  If believed, Thompson's testimony clearly constitutes direct evidence of FMLA retaliation, notwithstanding his answer to the contrary after being rehabilitated on re-cross during the deposition.

Still, that does not end the analysis.  "If an employee successfully presents direct evidence that the employer acted with

discriminatory motive, 'the burden shifts to the employer to prove by a preponderance of the evidence that it would have made the same decision absent the impermissible motive.'" *Demyanovich*, 747 F.3d at 432 (quoting *Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 382 (6th Cir. 2002).

Here, the University contends that it terminated Becknell for falsification of university records. University policy justifies termination of employment due to falsification of university records.

While it is undisputed that Becknell changed the transaction dates on some of the records that she entered, the parties dispute whether these acts constituted falsification of records. Still, Becknell argues that there was no policy preventing her practice of changing the transaction dates and that the axiUm database allowed a person entering data to change the transaction date. [DE 33-1 at 9, Pg ID 126]. In fact, the axiUm user manual describes the date field by saying, "This field indicates the date that changes were made to this planned treatment. *You can select the current date or a past date*, but you cannot select a future date." [DE 33-27 at 1, Pg ID 239 (emphasis added)].

Additionally, Becknell claims that her supervisors were aware of her method for inputting patient data and that it did not become an issue until after she took FMLA leave. [DE 33-1 at 9, Pg ID 126]. Furthermore, Becknell argues that she was singled out while

on FMLA leave because the College of Dentistry failed to investigate whether any other accounts receivable counselors had engaged in the same method of data entry. As such, Becknell asserts she was fired based on her decision to take FMLA leave and not based on falsification of records.

As such, a genuine dispute of material fact exists as to whether the University had a legitimate, non-discriminatory reason for terminating Becknell's employment. On the one hand, a fact finder may find by a preponderance of the evidence that Becknell's conduct constitutes falsification of records in violation of University policy, justifying her termination. On the other hand, however, a reasonable fact finder could conclude that the University knew about Becknell's practice of changing transaction dates and singled her out only after she took FMLA leave, constituting FMLA retaliation. This conclusion must be reached by a jury, not this Court. As a result, the parties' motions for summary judgment on FMLA retaliation based on direct evidence must be denied.

**(2) Circumstantial Evidence of FMLA Interference**

Similarly, a genuine dispute of material fact also exists pertaining to FMLA retaliation based on circumstantial evidence. Courts allow plaintiffs to prove discrimination through circumstantial evidence based on the understanding that discriminatory intent can rarely be ascertained through direct

evidence because direct evidence is usually unavailable. *See Kline*, 128 F.3d at 248. As a result, Courts use the McDonell-Douglas burden-shifting framework when considering retaliation claims based on circumstantial evidence. *Id.* at 348-49.

To establish a prima facie case of FMLA retaliation, a plaintiff must show that "(1) he engaged in protected activity, (2) his employer was aware of the protected activity, (3) he was subject to an adverse employment action, and (4) there was a causal nexus between the protected activity and the adverse employment action." *Demyanovich*, 747 F.3d at 432-33; *see also Seeger*, 681 F.3d at 283. In the retaliation context, "the employer's motive is an integral part of the analysis." *Edgar*, 443 F.3d at 508 (emphasis omitted).

Here, Becknell has met her burden of proof to demonstrate a prima facie case of FMLA retaliation. First, it is undisputed that Becknell clearly engaged in protected activity under the FMLA. Second, and related to the first element, the University was obviously aware that Becknell was invoking rights under the FMLA because the University granted Becknell's request to use FMLA leave. Third, the termination of Becknell's employment constitutes an adverse employment action. Fourth, and finally, the University concedes that "Becknell is able to establish an interference of temporal proximity in light of the timing of her

return from FMLA leave and her termination." [DE 37 at 6, Pg ID 539].

Having found that Becknell has demonstrated a prima facie case of FMLA retaliation, the burden shifts to the University "to articulate a legitimate nondiscriminatory reason for the adverse employment actions." *Marshall v. Rawlings Co., LLC*, 854 F.3d 368, 382 (6th Cir. 2017). If the Defendant carries the burden of articulating a legitimate, non-discriminatory reason, the Plaintiff must prove the proffered reasons were pretextual. *Kline*, 128 F.3d at 342.

Again, the University contends that it terminated Becknell's employment because she falsified records and not due to her use of FMLA benefits. Still, a genuine dispute of material fact exists on this point for the same reason as above in the direct evidence context. A reasonable fact finder could conclude that Becknell's practice of changing the transaction date in the axiUm database system constituted falsification or records and justified her termination based on University policy. Even so, a reasonable factfinder could also conclude that the University terminated Becknell based on her invocation of FMLA benefits. Becknell has submitted proof, if believed, that would demonstrate that she may have been singled out in the University's investigation of falsification of records. Whether the University has a legitimate reason to terminate Becknell's employment must be decided by a

jury.  As such, the parties' motions for summary judgment on FMLA retaliation based on circumstantial evidence must also be denied.

### D.  Unpaid Wages and Mitigation of Damages

"Employers who violate the FMLA are liable to the employee for damages and such equitable relief as may be appropriate." *Seeger*, 681 F.3d at 281 (citing 29 U.S.C. § 2617(a)(1)).  Still, consideration of damages is premature at this stage in the litigation.  The Court has found that the University interfered with Becknell's FMLA rights in one discrete instance.  Still, genuine disputes of material fact exist pertaining to whether FMLA retaliation occurred in this case.  As a result, the parties' requests for summary judgment on damages issues, including mitigation of damages, must be denied at this juncture.

### IV.  Conclusion

Based on the foregoing analysis, **IT IS ORDERED** as follows:

(1)  Plaintiff Lee Anna Becknell's motion for summary judgment [DE 33] is **GRANTED IN PART** and **DENIED IN PART**.  Plaintiff is granted summary judgment on her FMLA interference claim arising from the corrective action memorandum for her failure to comply with the College of Dentistry notice policy.  Otherwise, Plaintiff's motion for summary judgment is denied; and

(2)  Defendant University of Kentucky's motion for summary judgment [DE 34] is **GRANTED IN PART** and **DENIED IN PART**.  Defendant is granted summary judgment on FMLA interference claims arising

from the refusal to allow Becknell to use paid leave, the request for Becknell's marriage license, and the request for Becknell's training list.  Otherwise, Defendant's motion for summary judgment is denied.

This the 22nd day of April, 2019.



Signed By:

*Joseph M. Hood*

Senior U.S. District Judge